NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUCE BOONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 07-1848 (JLL) |
| v. | ) |
| | ) OPINION |
| CITY OF ELIZABETH, ELIZABETH | ) |
| POLICE DEPARTMENT, DAVID | ) |
| CONRAD, AMILCAR COLON, | ) |
| MICHAEL KURINZI, and | ) |
| VINCENT FLATLEY, | ) |
| | ) |
| Defendants. | ) |

**LINARES, District Judge.**

This matter comes before the Court upon motions for summary judgment [CM/ECF #20, 21, 22, 23, 24] filed by Defendants the City of Elizabeth, the Elizabeth Police Department, David Conrad, Amilcar Colon, Michael Kurinzi, and Vincent Flatley (collectively "Defendants"). No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth herein, this Court grants summary judgment to Defendants Amilcar Colon, the City of Elizabeth, the Elizabeth Police Department, and grants summary judgment in part but denies in part to the remaining defendants.

## INTRODUCTION

On June 11, 2005, two City of Elizabeth police officers, Amilcar Colon ("Colon") and David Conrad ("Conrad"), were on duty in plain clothes at the intersection of Jackson Avenue and Bond Street in Elizabeth, New Jersey. (Colon Br. at 2; Conrad Br. at 4.) The intersection of

1

Jackson and Bond in Elizabeth was known to both Colon and Conrad for its high incidence of narcotics trafficking. (Colon Br. at 2; Conrad Br. at 4.)

While seated in an unmarked police vehicle, Colon and Conrad observed an individual on a blue and silver bicycle, Plaintiff Bruce Boone ("Plaintiff" or "Boone"), interact with an unknown individual in the early evening hours of June 11. (Colon Br. at 2; Conrad Br. at 4.) Conrad saw Boone holding money in his right hand after the interaction. (Conrad Br. at 4-5.) The two officers then approached Boone and the unknown individual on foot; Boone began to pedal away at that point. (Colon Br. at 2; Conrad Br. at 5.) Boone shouted that he "didn't sell anything," while Colon ordered Boone and the unknown individual to stop. (Colon Br. at 2; Conrad Br. at 5.)

Colon pursued Boone on foot, while Conrad followed Boone in the police vehicle. (Colon Br. at 2; Conrad Br. at 5.) Boone entered a parking lot and jumped a fence to gain access to 1091 Anna Street. (Colon Br. at 2; Boone Aff. ¶ 3.) Boone entered 1091 Anna Street by kicking down the rear door. (Conrad Br. at 5.)

Boone claims that once the police officers followed him into the hallway, he "got on the floor" and surrendered, permitting his hands to be handcuffed behind his back. (Boone Aff. ¶¶ 3-4.) Boone recalls two officers having been in the hallway with him, one white and bald, the other Hispanic. (Id. ¶¶ 5-7.) He also asserts that one or both of the officers punched him between two and four times, and that he was hit in the head with a sharp object that drew blood and left a gash. (Id. ¶ 4.) According to Boone, he suffered multiple blows to the head. (Id. ¶ 7.)

Colon denies being at the scene of Boone's arrest in the hallway, asserting that he lost sight of Boone when he fled into 1091 Anna Street. (Colon Br. at 2.) Conrad asserts that he

2

grabbed Boone's right arm and that Boone struck him in return and struggled, requiring Conrad (and other officers responding to a call for backup) to wrestle Boone to the floor. (Conrad Br. at 5-6.) Conrad denies that any officer struck or hit Boone, and further claims that Boone's head wound was caused by him going over the handlebars of his bicycle after striking a brick wall while in flight to 1091 Anna Street. (Id. at 5-6.)

After his arrest for drug loitering, burglary, assault on police, and resisting arrest, Boone plead guilty to criminal trespass and obstruction of administration of the law. (Conrad Br. Ex. A.) He was sentenced to three years of probation in Superior Court on January 31, 2006. (Id.)

Plaintiff filed the instant action in New Jersey Superior Court, Union County, on March 30, 2007. Defendants removed to this Court on April 18, 2007 under the federal question jurisdiction of this Court. In the Complaint, Plaintiff brings claims against all of the individual officers for excessive use of force at the time of his arrest in violation of 42 U.S.C. § 1983; a claim against all of the individual officers for common law assault and battery; a claim against Conrad for falsely swearing out complaints; and a claim against the Elizabeth Police Department for failure to train and supervise. Defendants moved for summary judgment in a series of motions filed between January 6 and 16, 2009. Boone opposed summary judgment by means of an affidavit without additional legal argument.

## DISCUSSION

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**A.    Qualified Immunity for Excessive Use of Force, Assault, and Battery**

Qualified immunity shields state officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is not simply a defense to liability; it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

A qualified immunity analysis involves a two-step process. First, the court must ask whether "the facts alleged, [when] viewed in the light most favorable to the party asserting the

injury, show that the officer's conduct violated a constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, as alleged, demonstrate a constitutional violation, then the Court must ask whether the right asserted was "clearly established." Saucier, 533 U.S. at 201.  Pursuant to the Supreme Court's recent decision in Pearson, courts are free to analyze the Saucier steps in any order.  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).  However, "where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997).  Only upon carrying this initial burden must the defendant then demonstrate "that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." Id.

The use of excessive force by a police officer is a violation of the Fourth Amendment. Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006).  Failure to intercede and stop the excessive use of force by another police officer is, similarly, a violation of the Fourth Amendment.  Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002).  In order to determine whether force is excessive, courts look to the objective reasonableness of the police action, balancing such factors as the severity of the crime, whether the suspect represents a threat to safety, resistance to arrest, flight, the duration of the use of force, whether an arrest is taking place at the time, the number of individuals the officers are contending with, and the likelihood of a suspect's being armed. Couden, 446 F.3d at 497-97.

Defendants Conrad, Colon, Michael Kurinzi ("Kurinzi"), and Vincent Flatley ("Flatley") all move for summary judgment on the basis of qualified immunity.  Conrad argues that he is

entitled to qualified immunity because he did not use excessive force in subduing Boone, the force used in subduing Boone did not violate any clearly established right, and that the facts in evidence demonstrate that Conrad was not the officer who subdued Boone. (Conrad Br. 27-28.) Colon maintains that he is entitled to qualified immunity as there is no evidence that he was present during Boone's arrest, and the events underpinning the only claims against him—assault, battery, and excessive use of force in violation of the Constitution—occurred during Boone's arrest. (Colon Br. at 5.)   Kurinzi seeks qualified immunity on the basis that there is no evidence that he used force against Boone, and that his presence during Boone's flight and arrest did not violate the Constitution. (Kurinzi Br. at 7, 10-11.) Flatley argues for qualified immunity based on the absence of any evidence that he struck or touched Boone and that even if he did, any use of force was reasonable under the circumstances of Boone's flight. (Flatley Br. at 6.)

The evidence put forth by Boone in support of his claims against the officers consists of his affidavit and the police report.[1] This Court will consider both of these documents on the instant motion: the affidavit as evidence of what Boone could testify to at trial, and the police report as a Rule 803(8) public record.[2] United States v. Versaint, 849 F.2d 827, 831 (3d Cir. 1988). Given the differences between Boone's deposition and the affidavit, however, this Court must sift the two documents carefully on summary judgment. "When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a

---

[1] The police Investigation Report was submitted as part of Exhibit A to the moving brief of Officer Conrad; Boone refers to it in his affidavit.

[2] In the absence of a fully developed record including any objections and responses thereto, however, this Court cannot yet determine actual admissibility at trial.

'sham,' therefore not creating an impediment to a grant of summary judgment based on the deposition." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007).  Only where Boone has explained a divergence between his affidavit and his deposition can this Court credit the affidavit if the deposition contains contrary facts.  Jimenez, 503 F.3d at 254.

      1.    **Colon**

In Boone's deposition, he states that it was too dark in the hallway to describe the two officers who arrested him.  (Boone Dep. 29:6-12.)  He testified in his deposition that four officers took him out of the building, and that he could describe only one: a black male officer with light skin.  (Id. at 32:17 to 33:3.)  Later in his deposition, he describes two other officers that were with him when he came out of the 1091 Anna Street: one was a tall, bald, white officer, while the other was short, had black hair, and may have been Spanish.  (Id. at 36:6 to 37:1.)  Boone asserts a "belief" in his affidavit that Colon was the other officer in the hallway when he was apprehended.  (Boone Aff. ¶ 6.)  This belief, however, is contradicted by his deposition, in which he states that the lighting was too poor in the hallway for him to describe either of the two officers present.  (Boone Dep. 29:6-12.)  This Court, therefore, cannot credit Boone's belief as to Colon's presence in the hallway.  Jimenez, 503 F.3d at 254.  As the fact is otherwise undisputed that Colon was not present in the hallway, having been slower than Conrad to arrive on the scene, Colon could not have used excessive force on Boone (or have committed assault and battery).  (Colon Br. at 2.)  This Court, therefore, grants summary judgment to Colon, because he did not violate Boone's constitutional rights, assault, or batter him.  Curley v. Klem, 298 F.3d at 277.

## 2. Conrad, Kurinzi, and Flatley

Conrad arrested Boone with the assistance of Kurinzi and Flatley. (Conrad Br. Ex. A, Investigation Report.) Conrad admits using some amount of force to subdue Boone, but asserts—contrary to Boone's affidavit—that Boone resisted arrest and struck Conrad. (Id.) With respect to Flatley and Kurinzi, neither officer denies being present during Boone's arrest, although Kurinzi denies striking Boone. (Flatley Br. at 2-3; Kurinzi Br. at 2.)

When examined in the light most favorable to Boone, the nonmoving party, this Court finds that substantial questions of material fact exist with respect to Boone's arrest. The narrative offered by Boone in his deposition and affidavit contrasts sharply with the version in the police report. (Boone Dep. at 28-31; Boone Aff. ¶ 4; Conrad Br. Ex. A, Investigation Report.) Boone states that he offered no resistance in the hallway; Conrad claims that Boone resisted arrest and struck him. (Boone Aff. ¶ 4; Conrad Br. Ex. A, Investigation Report.) Boone claims that there were two officers in the hallway; Conrad reported that there were three. (Boone Dep. at 28-31; Conrad Br. Ex. A, Investigation Report.) Finally, Conrad argues vehemently that he is not bald, and that Boone has repeatedly described a bald officer with white hair above the ears. (Conrad Br. at 7-9; Conrad Br. Ex. C.)

Conrad, however, strenuously maintains that the maxim falsus in uno, falsus in omnibus requires the Court to disregard all of Boone's deposition testimony and his affidavit. (Conrad Br. at 29.) Conrad's chief piece of evidence with respect to the overall falsity of Boone's various affidavits is an affidavit from an unrelated case in which persons sued another Elizabeth police officer—Mikros—and identified the officer who beat him on June 11, 2005 as Officer Mikros.

(Conrad Br. at 29-30, Ex. B.) Boone, however, explains his mistaken identification of Mikros in his summary judgment affidavit; the erroneous identification arose from discussions he had while in detention with other prisoners as to the identity of his arresting officer, and that he now believes that Mikros was not present at his arrest. (Boone Aff. ¶¶ 2, 5.) This is an explanation of a statement in a new affidavit contradicting previous testimony, as permitted by the Third Circuit in Jimenez. 503 F.3d at 254. Given the explanation, it would be improper for this Court to weigh the credibility of Boone's divergent statements. Additionally, legal authority for application of the doctrine of falsus in uno, falsus in omnibus cited by Conrad implies that it is a question for the trier of fact tied to credibility, and credibility is not an issue before this Court on summary judgment. Bennun v. Rutgers State University, 941 F.2d 154, 179 (3d Cir. 1991) (finding doctrine applicable to findings of district judge in bench trial); McKenna v. Pacific Rail Service, 817 F. Supp. 498, 511 (D.N.J. 1993) reversed on other grounds, 32 F.3d 820 (3d Cir. 1994) (discussing doctrine in context of j.n.o.v. motion); Black's Law Dictionary 637 (8th ed. 2004) (referring to the doctrine as applied by juries). This Court finds, therefore, that the credibility of Boone as a witness is something that must be assessed by the finder of fact.

On the issue of Conrad's baldness, Conrad points to Boone's description of one of the officers who apprehended him as bald, with a fringe of white hair. (Boone Dep. 36:20-22.) Conrad maintains that he is not bald, and that he has light brown hair. (Conrad Br. at 28.) In support of his contention, Conrad supplied the Court with a photocopy of a photograph that shows a balding, though not bald head. (Conrad Br. Ex. C.) Conrad certainly has some hair in the photograph, but this Court cannot make a determination of the color of the hair from a black and white photocopy of the photograph. This Court finds that a jury will have to determine

9

whether Conrad could have been described as bald on June 11, 2005, and to weigh the credibility of the evidence and testimony of the witnesses in order to determine what actually occurred in the hallway of 1091 Anna Street on that night. Overall, given the number of issues of material fact still disputed with regard to Conrad's actions and Boone's credibility, this Court finds that substantial issues of material fact preclude summary judgment with respect to the excessive use of force.

With respect to the common law counts of assault and battery, however, there is no competent evidence presented that indicates the direct participation of either Flatley or Kurinzi in any beating Boone may have received, or of their acting to place Boone in apprehension of physical harm. Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009). Thus, with respect to Count II of Plaintiff's Complaint for common law assault and battery, there are no issues of material fact presented, and Flatley and Kurinzi are entitled to summary judgment.

      a.    **Violation of a Clearly Established Constitutional Right by Conrad**

Examining the events of June 11, 2005 in the light most favorable to Boone, he alleges that Conrad struck him several times after arresting and handcuffing him, and that Flatley and Kurinzi may have been present in the hallway during the beating. Using force upon an unarmed and non-resisting suspect who has already been subdued is a violation of the Fourth Amendment. Gulley v. Elizabeth Police Dept., No. 04-4445, 2006 WL 3694588, at *8 (D.N.J. Dec. 13, 2006) (Linares, J.). While Boone fled the police and broke into another building, there is no indication that Conrad and the other officers were expecting Boone to be armed, and Boone claims that his arms were bound behind his back by handcuffs when he was beaten. Even giving the police the

benefit of an at-the-scene evaluation of the risk posed by Boone, this Court holds that the use of force was excessive under the facts taken in the light most favorable to Boone. It is also clearly established that beating an unarmed, subdued suspect violates the Fourth Amendment. Gulley, No. 04-4445, 2006 WL 3694588, at *9. Conrad, therefore, is not entitled to qualified immunity on Counts I and II of Boone's Complaint.

### b. Violation of a Clearly Established Constitutional Right by Flatley and Kurinzi

Although Boone has not provided any evidence that Kurinzi or Flatley participated in his alleged beating, he brings § 1983 claims against all of the officers who were present at the beating on the basis of their failure to intercede on his behalf. (Compl. at 2.) Even if neither Kurinzi nor Flatley actually hit Boone, their failure to stop any beating of an unarmed, bound suspect violated the Fourth Amendment. Mensinger, 293 F.3d at 651 ("The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows."). Such a violation was also a clearly established violation of the law on June 11, 2005. Morales v. Taveras, No. 05-4032, 2007 WL 172392, at *16 (E.D. Pa. Jan. 18, 2007). Based on the police report, there is some evidence that Kurinzi and Flatley were present at Boone's arrest and supposed subsequent mistreatment, and Kurinzi and Flatley are thus not afforded qualified immunity on Count I of Plaintiff's Complaint.

### B. Qualified Immunity for Conrad on Falsely Swearing out Complaint

In Count III of the Complaint, Boone asserts a claim against Conrad, only, for falsely

11

swearing out complaints against Boone on four charges in violation of his federal Constitutional rights. (Compl. at 3.) Conrad claims that Boone pled guilty to two of these charges, and that Conrad had probable cause to arrest Boone on the other two. (Conrad Br. at 28.)

Conrad's brief suggests using a false arrest framework for analyzing Count III, and in the absence of any counterargument from Boone, this Court will do so. "Whether it would have been clear to a reasonable officer that probable cause justified the arrest requires an examination of the crime at issue[.]" Gilles v. Davis, 427 F.3d 197, 204 (3d Cir. 2005). This Court finds that there is no issue extant with regard to two of the charges filed by Conrad against Boone. Boone did, in fact, plead guilty to violations of N.J.S.A. §§ 2C:18-3 and 2C:29-1. (Conrad Br. Ex. A.) This Court must therefore determine whether Conrad had probable cause to arrest Boone on charges of aggravated assault (N.J.S.A. § 2C:12-1B(5)) and resisting arrest (N.J.S.A. § 2C:29-2(a)).

### 1. Aggravated Assault

One definition of aggravated assault in New Jersey is committing a simple assault on "[a]ny law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status as a law enforcement officer." N.J.S.A. § 2C:12-1(b)(5). Simple assault is committed when a person:

> (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
> (2) Negligently causes bodily injury to another with a deadly weapon; or
> (3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

N.J.S.A. § 2C:12-1(a).  The only fact in evidence supporting a charge of aggravated assault is the claim by Conrad that Boone struck him while Conrad was struggling with Boone.  (Conrad Br. Ex. A.)  Boone denies that he struck Conrad.  (Boone Aff. ¶ 8.)  Under the version of events most favorable to Boone, therefore, this Court cannot determine that probable cause existed to charge Boone with aggravated assault.

"Under the second step of the analysis, a police officer is entitled to qualified immunity unless it would have been clear to a reasonable officer there was no probable cause to arrest."  Gilles, 427 F.3d at 205.  Under this second step of the analysis, this Court finds that Conrad is entitled to qualified immunity.  Although Boone asserts that he did not strike Conrad, Conrad was arresting Boone in a dark hallway.  Under those circumstances present during the arrest, and dealing with a suspect who fled the police, Conrad may have attributed any inadvertent contact to Boone, and therefore had a reasonable belief that a struggle had occurred.  Boone's denial of striking Conrad does not prevent Conrad from having come into contact with someone or something else, and a reasonable officer might have felt that the suspect lashed out.  For these reasons, Conrad is entitled to qualified immunity with respect to the aggravated assault charge.

### 2. Resisting Arrest

The relevant part of New Jersey's resisting arrest statute reads as follows:

> a. (1) Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest . (2) Except as provided in paragraph (3), a person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (3) An offense under paragraph (1) or (2) of subsection a. is a crime of the third degree if the person:

> (a) Uses or threatens to use physical force or violence against the law enforcement officer or another; or
>
> (b) Uses any other means to create a substantial risk of causing physical injury to the public servant or another.
>
> It is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance.

N.J.S.A. § 2C:29-2(a). Under this statute, Conrad had probable cause to charge Boone with third degree resisting arrest. (Conrad Br. Ex. A.) After being ordered to stop by Colon, Boone fled, jumped a fence, and broke into a building. His flight, plus the introduction of obstacles into the path of the officers created substantial risks of injury for the officers in pursuit. These actions provide sufficient probable cause under N.J.S.A. § 2C:29-2(a) to afford Conrad qualified immunity, and therefore Conrad is granted summary judgment as to Count III of the Complaint.

## C.   The City of Elizabeth and Elizabeth Police Department

Defendants the City of Elizabeth and the Elizabeth Police Department (collectively "the City") move for summary judgment on the basis that the Complaint sets forth no facts to support municipal liability under Monell v. Department of Social Services of New York and that there is no triable issue of fact regarding any policy or custom employed by the City that might support Plaintiff's claim. 436 U.S. 658, 691 (1978); City Br. at 3, 5. Plaintiff does not oppose the City's motion.

This Court finds that there are no facts extant to support any claims against the City. "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996). The record is presently bare as to any evidence of formal policy or informal custom on the part of the City. Plaintiff, therefore, has failed to meet his burden at summary judgment, and this Court grants same to the City. <u>Celotex</u>, 477 U.S. at 324.

## CONCLUSION

For the forgoing reasons, this Court grants summary judgment to Colon and the City. This Court grants summary judgment in part and denies in part to Conrad, Kurinzi, and Flatley. An appropriate Order accompanies this Opinion.


DATED: August 25, 2009                      /s/ Jose L. Linares
                                            United States District Judge